UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOE ROSALES,

                                        Petitioner,                          **OPINION & ORDER**

        - against -                                                           No. 20-CV-2136 (CS)

WARDEN J. PETRUCCI,

                                        Respondent.
-------------------------------------------------------------x

<u>Appearances</u>:

Joe Rosales
Otisville, New York
*Pro Se Petitioner*

Brandon H. Cowart
Assistant United States Attorney
New York, New York
*Counsel for Respondent*

<u>Seibel, J.</u>

        Before the Court is the Petition of Joe Rosales ("Petitioner") for a writ of *habeas corpus*

under 28 U.S.C. § 2241.  (ECF No. 1 ("Pet.").)  For the following reasons, the Petition is

DENIED.

## I.        **BACKGROUND**

### A.        **Factual and Procedural Background**

        Petitioner is currently incarcerated at FCI Otisville.  (Pet. at 1.)  In 2018 he pleaded guilty

to one count of conspiracy to possess a controlled substance with intent to distribute.  *See*

Judgment, *United States v. Rosales*, No. 18-CR-55 (N.D. Tex. May 9, 2018), ECF No. 87.  He

was sentenced to thirty years' imprisonment, *id.*, and is scheduled to be released on December

30, 2043, (ECF No. 12 ("McFarland Decl.") Ex. 1 at 1).

On March 9, 2020, Petitioner filed the instant Petition, setting forth three grounds for relief.  (Pet. at 3-4.)  First, Petitioner contends that the Bureau of Prisons ("BOP") incorrectly calculated his "PATTERN" score,[1] which caused him to be misclassified as having a "medium" risk of recidivism.  (*Id.* at 3.)  As a result of his PATTERN classification, Petitioner states that he is ineligible to earn certain credits for programs he has completed and will complete in the future, and is "relegated to [an] inferior, less safe prison placement."  (*Id.*)  He requests an order directing the BOP to:  allow him to review his PATTERN score;[2] correct the errors; and provide him with "retroactive time credits."  (*Id.* at 5.)  Second, Petitioner asserts that the BOP has withheld incentives, including time credits, to which he asserts he is entitled under the FSA.  (*Id.* at 3.)  He also claims that the BOP has wrongfully "created [its] own list of qualifying programs/activities which does <u>NOT</u> include all of those provided under the [FSA]."  (*Id.*) (emphasis in original).  He asks the Court to order the BOP to award him "retroactive (and/or) compensatory incentives for all programs valid under the [FSA]."  (*Id* at 5.)  Third, he claims that the BOP has miscalculated his security points in violation of his due process rights and the BOP's own policies, thus making him ineligible for a lower security prison transfer closer to his home in Texas.  (*Id.* at 4.)  He asks the Court to order BOP officials to correct his security level and consider him for a transfer.  (*Id.* at 5.)

---

[1] PATTERN is an acronym for "Prisoner Assessment Tool Targeting Estimated Risk and Needs."  The United States Department of Justice created PATTERN on July 19, 2019 in compliance with the First Step Act of 2018 ("FSA").  *United States v. Burman*, No. 16-CR-190, 2021 WL 681401, at *5 n.3 (S.D.N.Y. Feb. 21, 2021), *appeal withdrawn*, 2021 WL 3925982 (2d Cir. June 7, 2021); *see* 18 U.S.C. § 3632(a); Part I.B below.

[2] The Government filed a copy of Rosales's PATTERN score sheet as part of its submission in opposition to the Petition.  (McFarland Decl. Ex. 1.)

Petitioner states that he raised each of these issues informally but "was told any appeal would be futile – what they are doing is unchangeable, official BOP policy."  (*Id.* at 3.)  In addition, he alleges, "Staff has not timely responded to informal resolution efforts, making any grievance untimely and impossible to file.  Staff said they would 'look into' my concerns – leaving me with nothing further to grieve."  (*Id.* at 3.)

On June 8, 2020, the Government filed a return and memorandum of law in opposition to the Petition, (ECF No. 11 ("Opp.")), along with a declaration from Nicole McFarland, a Supervisory Staff Attorney employed by the BOP, (McFarland Decl.).  Annexed to Ms. McFarland's declaration are copies of Petitioner's Inmate Activity Record, his PATTERN score sheet, and his Custody Classification Form.  (*Id.* Ex. 1.)

On June 23, 2020, Petitioner moved for a "substantial extension of time" to file an amended Petition under Federal Rule of Civil Procedure 15.  (ECF No. 14.)  Petitioner argued that COVID-related lockdowns prevented him from properly responding to the Government's brief.  (*Id.*)  In an Order the same day, the Court denied the motion without prejudice, explaining that, although it did not appear that the issues raised by the Government could be addressed through amendment, Petitioner could submit a proposed amended petition as part of his response to the Government's opposition.  (ECF No. 15.)  The Court's June 23, 2020 Order was served on Petitioner by mail on June 26, 2020.  (ECF No. 17.)  To date, Petitioner has not filed a response to the government's opposition or a proposed amended petition.[3]

---

[3] The last filing in this case was a July 21, 2020 letter signed by nonparty Robert Tashbook, who requested "a list of any activity in the case."  (ECF No. 18.)  Although Mr. Tashbook did not explain his role, he was, at the time of writing, also incarcerated at FCI Otisville, and apparently is providing legal advice to Petitioner.  (*See id.* (Tashbook referring to his quarantine status); ECF No. 14 at 2 (Petitioner referring to his "legal advisor" being in quarantine)).  Petitioner's submissions, (ECF Nos. 1, 5, 14), appear to be in the same

B.     **The First Step Act**

On December 21, 2018, President Donald Trump signed the FSA into law.  One of its provisions required that the Department of Justice create a "risk and needs assessment system," to – among other things – "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism," and "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly."  18 U.S.C. § 3632(a).  The risk and needs assessment system had to "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs," including time credits, increased privileges, and consideration for placement in a facility closer to the inmate's release residence upon request.[4]  *Id.* § 3632(d).  On July 19, 2019, the Department of Justice created PATTERN in compliance with these mandates.  *Burman*, 2021 WL 681401, at *5 n.3.

Under the FSA, the BOP had 180 days after the introduction of PATTERN – that is, until January 15, 2020 – to "implement and complete the initial intake risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate evidence-based recidivism reduction

---

handwriting as Mr. Tashbook's, (ECF No. 18).  Despite Mr. Tashbook having no status in the case, it appears from the docket that the Clerk of Court sent him a form with which to request a docket sheet.  (*See* July 22, 2020 docket entry.)  The docket reflects no further activity.

[4] In addition to bed availability and the warden's recommendation, consideration for such a transfer is subject to "the prisoner's security designation."  18 U.S.C. § 3632(d)(2)(B).  Pursuant to broad statutory authority in 18 U.S.C. § 3621(b) to "designate the place of the prisoner's imprisonment" and "the prisoner's security designation," the BOP classifies and designates inmates according to Program Statement 5100.08.  *See* Fed. Bureau of Prisons, Program Statement 5100.08, Inmate Security Designation and Custody Classification (updated 2019), https://www.bop.gov/policy/progstat/5100_008cn.pdf.  An inmate's security level is determined by a variety of factors and background information, including the severity of the current offense and the inmate's criminal history score, history of escape or attempts, age, education level, and drug or alcohol abuse.  *See id.* ch. 4 at 5-14.

programs based on that determination." *Id.* § 3621(h)(1)(A).  The statute requires that the BOP must begin providing the evidence-based recidivism reduction programs – through which an inmate can earn the incentives and rewards set out in the FSA – by no later than January 15, 2022.  *See id.* § 3621(h)(2)(A).

## II.   <u>LEGAL STANDARD</u>

### A.   <u>*Habeas Corpus* Relief Under 28 U.S.C. § 2241</u>

*Habeas corpus* relief under 28 U.S.C. § 2241 is available to individuals "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3). The Court has the authority to review a petition for a writ of *habeas corpus* and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]."  *Id.* § 2243.  A petition for a writ of *habeas corpus* under § 2241 allows a federal inmate to challenge the "execution of his sentence" after conviction, rather than the imposition of the sentence itself.  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Execution of a sentence may include "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."  *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see Chi v. Fernandez*, No. 18-CV-1212, 2019 WL 6894837, at *4 (N.D.N.Y. Dec. 18, 2019) ("Execution of a sentence includes, among other things, prison disciplinary actions, loss of [good time credit], and the computation of the sentence . . . .").[5]

---

[5] The Court will send Petitioner copies of the unreported decisions cited in this Opinion and Order.

### B.    *Pro se* **Litigants**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up); *see Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021) (construing *habeas* petition liberally in light of special solicitude due to *pro se* litigants), *report and recommendation adopted*, 2021 WL 4391122 (S.D.N.Y. Sept. 24, 2021).  Nevertheless, "threadbare recitals" and "mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

## III.    DISCUSSION

The Government contends that the Court should deny the Petition because Petitioner failed to exhaust his administrative remedies, and because in Ground Two Petitioner requests relief that is unavailable under the FSA.

### A.    **Exhaustion of Administrative Remedies**

Before filing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, federal inmates must exhaust their administrative remedies.  *Carmona*, 243 F.3d at 634; *see Lesane v. Tellez*, No. 21-CV-2074, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) ("Although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to *habeas corpus* relief under § 2241.").  "The exhaustion requirement protects the authority of administrative agencies, limits interference in agency affairs, develops the factual record to make judicial review more efficient, and resolves

issues to render judicial review unnecessary." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (cleaned up).  "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Id.*; *see Zucker v. Menifee*, No. 03-CV-10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) ("[T]he exhaustion requirement for § 2241 petitions is prudential, not statutory, unlike habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. Therefore, [Petitioner's] failure to exhaust may be excused at the court's discretion.") (cleaned up).  Courts may excuse a *habeas* petitioner's failure to exhaust administrative remedies where doing so "would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) (cleaned up); *see Rosenthal*, 667 F. Supp. 2d at 366 ("A court can excuse a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it.") (cleaned up).

Here, the relevant administrative procedures are provided by the BOP's Administrative Remedy Program ("ARP"), through which an inmate may "seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a); *see Rosenthal*, 667 F. Supp. 2d at 366 ("Federal inmates who seek to challenge the conditions of their confinement must first utilize the [ARP] developed by the BOP.").  Inmates must complete each of the following four steps in the ARP:

> [F]irst, by attempting to resolve the issue informally, *see* [28 C.F.R.] § 542.13; second, by submitting a formal written Administrative Remedy Request . . . to the institution at which the inmate is housed, *see id.* § 542.14; third, by appealing an unfavorable decision at the institutional level to the Regional Director of the BOP, *see id.* § 542.15; and fourth, by appealing an unfavorable decision at the regional level to the BOP's General Counsel. *See id.*

*Rosenthal*, 667 F. Supp. 2d at 366.  The regulations provide that "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).

It is undisputed that Petitioner failed to file an Administrative Remedy Request after attempting informal resolution.  (Pet. at 3; Opp. at 8; McFarland Decl. ¶ 4.)  But Petitioner suggests that exhaustion would have been futile because "[prison] staff ha[d] not timely responded to informal resolution efforts, making any grievance untimely and impossible to file"; and because he was "told" that "any appeal would be futile – what they are doing is unchangeable, official BOP Policy."[6]  (Pet. at 3.)  Neither of these circumstances is sufficient to excuse Rosales's failure to exhaust his administrative remedies.

First, contrary to Petitioner's contention that it would have been "impossible" for him to pursue his remedies under the ARP because of the prison staff's failure to timely respond to his informal request, the expiration of the twenty-day deadline to appeal the denial of an informal request does not prevent the pursuit of a grievance.  Where an inmate can "demonstrate[] a valid reason for delay," including "an unusually long period taken for informal resolution," they may seek an extension of time to appeal.  28 C.F.R. § 542.14(b).  Additionally, if an inmate "does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id.* § 542.18.  Thus, although

---

[6] It is unclear whether Petitioner is alleging that a prison official or someone else "told" him that appeal would be futile and that he was being subjected to an unchangeable policy.  (Pet. at 3.)  It is far from clear that this statement was made by a prison official, as in the same part of the Petition he alleges that the response he received from prison staff is that they would "look into" his concerns.  (*Id.*)  Giving Petitioner special solicitude, I will assume some prison staff member made the reported comment.

prison staff allegedly did not timely respond to Petitioner's attempt at informal resolution, Petitioner could have requested an extension of time to file his formal request with the Warden or, alternatively, could have taken the staff's non-response as a negative answer and gone forward with the formal grievance.  He did neither.  Given these potential procedural solutions, it would not have been "impossible" for Petitioner to pursue his administrative remedies under the circumstances.  *Cf. Carmona*, 243 F.3d at 634 (courts should excuse failure to exhaust only where "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies").

Second, Petitioner's assertion that exhaustion would be futile because the relevant BOP policies are "unchangeable" is unavailing.  (Pet. at 3.)  The Government is correct that, at least with regard to regard to Grounds One and Three in the Petition, "Rosales is not challenging a categorical interpretation of BOP policy concerning, for example, the calculation of inmate PATTERN Scores in general," but "is instead challenging BOP's policies as applied to him to determine his PATTERN Score, custody level score, and institution placement."  (Opp. at 9.)[7] Accordingly, this is not a case where the BOP, at an institutional level, has already categorically predetermined the issues Petitioner is raising.  *See Rosenthal*, 667 F. Supp. at 367 (concluding that exhaustion would not be futile where petitioner "does not identify any official BOP policy that . . . categorically precludes the relief [petitioner] seeks").  To the extent Petitioner's challenge is unique to his specific background and circumstances, it would not be futile for Petitioner to raise the alleged mistakes that resulted in an incorrect PATTERN score and security

---

[7] Similarly, the gravamen of Ground Two is that Petitioner individually is being denied proper credit.  Petitioner does suggest that this denial is due, at least in part, to the BOP's categorical interpretation of the FSA.  But even if Petitioner's failure to exhaust Ground Two may be excused as futile, I conclude below that his challenge in this regard is premature and must be denied for that reason.  (*See* Part III.B.)

classification through the ARP.  This type of challenge falls squarely within the sorts of issues to

be raised with the BOP.  *See, e.g.*, *United States v. Nwankwo*, No. 12-CR-31, 2019 WL 4743823,

at *2 (S.D.N.Y. Sept. 17, 2019) (inmate requesting clarification on eligibility for time credits

contemplated by FSA "must then exhaust his administrative remedies before the BOP prior to

moving the Court for a reduction of his sentence"); *Simon v. Bergami*, No. 21-CV-489, 2021 WL

3856256, at *3 (D.N.J. Aug. 30, 2021) (petitioner must exhaust administrative remedies when

challenging the calculation of his PATTERN score and entitlement to credits under the FSA).

Finally, whether Petitioner would have been successful had he continued the appeals

process under the ARP is beside the point because "even if it is likely that [Petitioner's]

administrative appeals would have been denied, such a showing would not prove futility."

*Rosenthal*, 667 F. Supp. 2d at 367; *see Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)

("That [petitioner's] argument would likely have failed is not tantamount to stating that it would

have been futile to raise it; and indeed, many of the purposes for requiring exhaustion would

have been served had [petitioner] raised his claim below.").

## B.  Relief Requested under the FSA

Even to the extent some of the issues raised in Ground Two of the Petition could reflect

"unchangeable BOP Policy" as Petitioner contends, (Pet. at 3), his challenge is premature.

Petitioner's claim that he is entitled to be retroactively awarded the incentives he claims he has

earned under the FSA is not yet ripe, because the FSA "does not require the award of time

credits until the end of the two-year phase-in-period, namely until January 15, 2022."  *DiStefano*

*v. Pliler*, No. 21-CV-773, 2021 WL 3524130, at *2 (S.D.N.Y. July 5, 2021); *see Cohen v. United*

*States*, No. 20-CV-10833, 2021 WL 1549917, at *2-3 (S.D.N.Y. Apr. 20, 2021) (§ 2241 petition

seeking a determination of earned time credits pursuant to the FSA was "premature" and not ripe

for review, because the BOP is not required to provide credits until January 15, 2022). The vast majority of courts that have considered this issue have agreed. *See, e.g.*, *Manning v. Kallas*, No. 21-CV-160, 2021 WL 4526653, at *4 (D. Minn. Sept. 9, 2021); *Hand v. Barr*, No. 20-CV-348, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021); *James v. Johns*, No. 19-CV-117, 2020 WL 5047158, at *2 (S.D. Ga. Aug. 4, 2020).[8] While the BOP may, within its discretion, assign credits based on existing evidence-based recidivism reduction programs and productive activities before January 15, 2022, it is not required to do so. 18 U.S.C. § 3621(h)(4); *see Cohen*, 2021 WL 1549917, at *3 (the FSA "pointedly does not require the BOP to [begin] to assign [credits based on completion of qualifying programs] during the phase-in period" and thus until the phase-in is complete "the Court would lack any basis to determine if the BOP was complying with the statutory requirements"). Petitioner's claim for FSA credit is thus not ripe for adjudication. *See DiStefano*, 2021 WL 3524130, at *2.

### C.   Leave to Amend

Leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) (*per curiam*) (standard for amending *habeas* petition is governed by Federal Rule of Procedure 15(a)). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment is futile when the problem with a plaintiff's causes of

---

[8] It also appears that Petitioner misreads the FSA. Petitioner argues that "the BOP has created their own list of qualifying programs/activities which does <u>NOT</u> include all of those provided under the law," (Pet. at 3), but the FSA does not include a list of qualifying programs and activities: it simply provides criteria for such programs, *see* 18 U.S.C. § 3635(3), and tasks the BOP with offering them, *see id.* § 3621(h)(1).

action is substantive and better pleading will not cure it." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (cleaned up).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).

It has been well over one year since the Court granted leave for Petitioner to submit a proposed amended petition, (ECF No. 15), and he has not done so.  In addition, Petitioner's failure to exhaust the administrative process and the premature nature of his FSA claim are substantive issues that could not be rectified with better pleading.  Accordingly, the Court declines to grant leave to amend the Petition.

IV.   **CONCLUSION**

For the foregoing reasons, the Petition is DENIED.  The Clerk of the Court is respectfully directed to send a copy of this Opinion and Order to Petitioner and to close the case.

**SO ORDERED.**

Dated:  November 22, 2021
       White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.

12