UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOE ROSALES,

                           Petitioner,                  **OPINION & ORDER**

  - against -                                                  No. 20-CV-2136 (CS)

WARDEN WILLIAM PLILER,[1]

                           Respondent.
-------------------------------------------------------------x

Appearances:

Joe Rosales
Otisville, New York
*Pro Se Petitioner*

Brandon H. Cowart
Assistant United States Attorney
New York, New York
*Counsel for Respondent*

Seibel, J.

      Before the Court are (1) Petitioner's Renewed Petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, (ECF No. 20 ("Renewed Pet.")),[2] and (2) his motion for judicial notice of certain documents and to amend the relief sought in the Renewed Petition, (ECF No. 27). For the following reasons, the Renewed Petition, as augmented by the request to amend the relief requested therein, is DENIED.

---

[1] The current Warden of the Federal Correctional Institution at Otisville, New York ("FCI Otisville"), William Pliler, is automatically substituted for the former Warden against whom this action was initiated, James Petrucci. *See* Fed. R. Civ. P. 25(d).

[2] Petitioner styled this filing "Request to Reopen in Light of Changed Circumstances or Provision of Alternative Relief for Mr. Rosales." Petitioner also submitted a reply in support of this application. (ECF No. 26.)

I.     **<u>BACKGROUND</u>**

Petitioner is currently incarcerated at FCI Otisville, (*see* Renewed Pet. at 3), as a result of a 2018 conviction for conspiracy to possess a controlled substance with intent to distribute, *see* Judgment, *United States v. Rosales*, No. 18-CR-55 (N.D. Tex. Sept. 28, 2018), ECF No. 87.  His full-term release date is November 10, 2047, and his projected Good Conduct Time release date is June 4, 2043.  (*See* ECF No. 34 ("Meredick Decl.") ¶ 17, Ex. B.)

Petitioner filed his original *habeas* Petition on March 9, 2020.  (ECF No. 1 ("Pet.").)  The Petition set out three grounds for relief:  (1) the Bureau of Prisons ("BOP") had incorrectly calculated Petitioner's "PATTERN" score,[3] (2) the BOP had withheld incentives, including earned time credits, to which Petitioner asserted he was entitled under the FSA, and (3) the BOP had miscalculated Petitioner's security points in violation of his due process rights and the BOP's own policies.  (Pet. at 3-4.)  On November 22, 2021, I denied the Petition, finding that Petitioner had failed to exhaust his administrative remedies as to all three grounds and that, at least as to grounds one and three, there was no basis to excuse that failure.  *Rosales v. Petrucci*, No. 20-CV-2136, 2021 WL 5449701, at *4-5 (S.D.N.Y. Nov. 22, 2021).  I did not squarely address whether Petitioner's failure to exhaust his administrative remedies with respect to his second ground for relief was excusable; instead I concluded that even if the failure to exhaust was excusable, Petitioner's claim that BOP was withholding incentives to which he was entitled under the FSA was premature because the FSA did not require BOP to "provid[e] the evidence-

---

[3] PATTERN is an acronym for "Prisoner Assessment Tool Targeting Estimated Risk and Needs."  The United States Department of Justice created PATTERN on July 19, 2019 in compliance with the First Step Act of 2018 ("FSA").  *United States v. Burman*, No. 16-CR-190, 2021 WL 681401, at *5 n.3 (S.D.N.Y. Feb. 21, 2021), *appeal withdrawn*, 2021 WL 3925982 (2d Cir. June 7, 2021); *see* 18 U.S.C. § 3632(a).

based recidivism reduction programs – through which an inmate can earn the incentives and rewards set out in the FSA" – until January 15, 2022. *Id.* at *3; *see* 18 U.S.C. § 3621(h)(2)(A).

On March 9, 2022, the Court received Petitioner's Renewed Petition, in which Petitioner argues that his claim that he is entitled to have FSA Time Credits applied is now ripe. (Renewed Pet.)[4] Petitioner asserts that BOP's failure to apply credits he has earned to recalculate his release date impacts his "housing, programming opportunities, and even the chance to transfer to a prison closer to his Texas home." (*Id.* at 2.) Respondent opposed the motion on April 8, 2022, arguing that Petitioner had still not exhausted his administrative remedies, (ECF No. 22), and attaching to a declaration from a BOP Supervisory Staff Attorney records showing that (1) Petitioner failed to seek an administrative remedy through the prison's grievance system, (ECF No. 23 ("Papapetru Decl.")) ¶ 4, Ex. 1), and (2) in any case, Petitioner was, as of April 8, 2022, "ineligible to receive benefits under the FSA," (*id.* ¶ 5, Ex. 2).

With leave from the Court, (ECF No. 24), on May 13, 2022, Petitioner submitted a reply brief, explaining that after Respondent filed his opposition brief, BOP implemented changes to PATTERN that might affect his eligibility to receive benefits under the FSA, (ECF No. 26 at 1-2). He asked the Court to direct Respondent to reanalyze his risk level and eligibility in light of these changes and to state whether he is eligible for FSA Time Credits. (*Id.* at 2.) He also explained that Respondent's April 8 filing was the first time he had been told that he was ineligible for FSA benefits and that, given the lack of transparency regarding the award of FSA Time Credits, he was unable to determine whether "the Warden is violating a policy that

---

[4] Petitioner noted that changes in BOP policy have satisfied him as to the first and third grounds for relief in his original Petition. (Renewed Pet. at 1.) In any case, the Court's prior holding that he failed to exhaust his administrative remedies as to those claims would preclude any attempt to reopen or renew his Petition with regard to those grounds.

3

correctly implements the statute or if the Warden is simply following a National or Regional Policy that violates the statute." (ECF No. 26 at 3-4.) Finally, with regard to administrative exhaustion, Petitioner stated that he was told by the two Unit Managers at FCI Otisville, who are his "only conduits" for filing an administrative grievance, that "since [FSA Time Credits] will eventually be awarded, the issue is 'resolved' and therefore ungrievable." (*Id.* at 5.)

On June 30, 2022, Petitioner submitted a filing captioned "Request for Judicial Notice and to Amend Relief Requested," to which he attached several pages of BOP records, as follows: (1) a document titled "Sentencing Monitoring Computation Data," which states that as of June 22, 2022, Petitioner's "FSA ELIGIBILITY STATUS IS: ELIGIBLE" but reflects that no adjustments have been made to his anticipated release date as a result of FSA Time Credits, (ECF No. 27 at 4, 8);[5] (2) one page from a document titled "Individualized Needs Plan – Program Review," which includes an entry dated December 4, 2019 that reads "FTC – ELIGIBLE – REVIEWED," (*id.* at 5);[6] and (3) one page from a document titled "FSA Recidivism Risk Assessment," in which Petitioner's Risk Level, as of June 22, 2022, is recorded as low, (*id.* at 6). Petitioner also amended his requested relief, stating that in addition to ordering the BOP to award him, and apply to his sentence, all of the FSA Time Credits he has earned to date, the Court should also order BOP to reassess and award him his FSA Time Credits every sixty days going forward. (*Id.* at 2-3.)

On August 5, 2022, Respondent responded to Petitioner's June 30 filing. (ECF No. 33.) He submitted a declaration from Theresa Meredick, a BOP employee who is Petitioner's Case

---

[5] Exhibits 1, (ECF No. 27 at 4), and 4, (*id.* at 8), to Petitioner's filing are two pages that together comprise one document.

[6] Based on the parties' submissions, I understand "FTC" to be an acronym for "FSA Time Credits." (*See* ECF No. 33 at 6.)

4

Manager, which clarified several issues regarding Petitioner's current FSA status and the documents he submitted. (*See* Meredick Decl.) Ms. Meredick explains that as a Case Manager, she periodically meets with inmates "to review FSA-related matters," which includes "FSA-related records such as their current PATTERN score sheet, and their Individual Needs Plan-Program Review." (*Id.* ¶ 9.) She held a progress review meeting with Petitioner on June 22, 2022, during which she provided him with the documents he submitted with his June 30 filing. (*Id.* ¶¶ 10-11.) According to Ms. Meredick, the "Sentencing Monitoring Computation Data" document submitted by Petitioner reflects whether an inmate is eligible "to apply FSA Time Credits to attain an earlier release from custody." (*Id.* ¶ 12.) Generally, under the FSA, credits can be applied to grant an early release only when the inmate's recidivism risk level is "minimum" or "low." *See* 18 U.S.C. § 3624(g)(1)(B), (D). As of June 22, 2022, Petitioner's "FSA Recidivism Risk Assessment," which reflects an inmate's current recidivism risk level, listed his risk level as low. (ECF No. 27 at 6; Meredick Decl. Ex. D; *see* Meredick Decl. ¶ 12 ("Petitioner's recidivism risk status changed to 'low' on June 22, 2022.").) But according to Ms. Meredick, at some point after June 22, 2022, Petitioner's file was updated to reflect two state-court detainers resulting from pending charges in New Mexico and Washington, which make him ineligible to have his FSA Time Credits applied to attain an earlier release. (Meredick Decl. ¶ 18, Ex. E.) His "Sentencing Monitoring Computation Data" as of July 25, 2022, reflects his FSA eligibility status as "Ineligible." (*Id.* Ex. B.)

Ms. Meredick also clarified that the "Individual Needs Plan-Program Review" reflects whether an inmate is eligible "to *earn* FSA Time Credits" – that is, whether an inmate's offense disqualifies them from earning such credits under 18 U.S.C. § 3632(d)(4)(D). (*Id.* ¶ 13 (emphasis added).) In short, BOP's position, as stated by Ms. Meredick, is that Petitioner is

5

currently eligible to *earn* FSA Time Credits, but not to have them *applied* for purposes of early release.  (*Id.*)[7]

## II. LEGAL STANDARD

### A. *Habeas Corpus* Relief Under 28 U.S.C. § 2241

*Habeas corpus* relief under 28 U.S.C. § 2241 is available to individuals "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court has the authority to review a petition for a writ of *habeas corpus* and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]."  *Id.* § 2243.  A petition for a writ of *habeas corpus* under § 2241 allows a federal inmate to challenge the "execution of his sentence" after conviction, rather than the imposition of the sentence itself.  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Execution of a sentence may include "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."  *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see Chi v. Fernandez*, No. 18-CV-1212, 2019 WL 6894837, at *4 (N.D.N.Y. Dec. 18, 2019) ("Execution of a sentence includes, among other things, prison disciplinary actions, loss of [good time credit], and the computation of the sentence . . . .").[8]

---

[7] Ms. Meredick represents that BOP has been developing tool to automatically calculate and apply FSA Time Credits for "all eligible inmates."  (Meredick Decl. ¶ 16.)  No timeline is given, but she represents that as of August 3, 2022, this tool was in the "final stages" of development and testing.  (*Id.*)

[8] The Court will send Petitioner copies of the unreported decisions cited in this Opinion and Order.

6

B.   *Pro se* **Litigants**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up); *see Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021) (construing *habeas* petition liberally in light of special solicitude due to *pro se* litigants), *report and recommendation adopted*, 2021 WL 4391122 (S.D.N.Y. Sept. 24, 2021). Nevertheless, "threadbare recitals" and "mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

III.   **DISCUSSION**

Respondent maintains that Petitioner's Renewed Petition should be denied because he has never exhausted his administrative remedies with regard to his claim. As set out in the Court's previous ruling in this matter:

> Before filing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, federal inmates must exhaust their administrative remedies. *Carmona*, 243 F.3d at 634; *see Lesane v. Tellez*, No. 21-CV-2074, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) ("Although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to *habeas corpus* relief under § 2241."). "The exhaustion requirement protects the authority of administrative agencies, limits interference in agency affairs, develops the factual record to make judicial review more efficient, and resolves issues to render judicial review unnecessary." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (cleaned up). "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Id.*; *see Zucker v. Menifee*, No. 03-CV-10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) ("[T]he exhaustion requirement for § 2241 petitions is prudential, not statutory, unlike habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. Therefore, [Petitioner's] failure to exhaust may be

7

excused at the court's discretion.") (cleaned up).  Courts may excuse a *habeas* petitioner's failure to exhaust administrative remedies where doing so "would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) (cleaned up); *see Rosenthal*, 667 F. Supp. 2d at 366 ("A court can excuse a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it.") (cleaned up).

*Rosales*, 2021 WL 5449701, at *3.

Petitioner states in his May 13, 2022 submission that the Unit Managers responsible for issuing and processing BP-9 forms – the first step of BOP's grievance process – advised him that they considered his issue "resolved" because he will eventually be credited with the appropriate time credits.  (ECF No. 26 at 5.)  Respondent does not address or dispute this claim.  Thus, as to this specific issue – that is, when BOP is required to apply any earned time credits to recalculate Petitioner's sentence – it appears that Petitioner's failure to exhaust his remedies may be excusable.  Accordingly, the Court will address the merits.[9]

Petitioner asks the Court to require BOP to immediately apply or credit him with all of the FSA Time Credits he has earned to date, and to continue crediting him with newly earned credits every sixty days.  (Renewed Pet. at 2-3; ECF No. 27 at 2-3).  But he has not shown that he is entitled to any such relief.  While the FSA required that BOP "provide . . . evidence-based recidivism reduction programs and productive activities for all prisoners" by no later than January 15, 2022, there is no requirement that the BOP immediately apply all such credits to

---

[9] To the extent Petitioner's or Respondent's filings raise collateral issues – including but not limited to Respondent's position that the state court detainers make Petitioner ineligible for early release – Petitioner has not shown that exhaustion would be futile, and if he wishes to pursue claims on those issues he must pursue the appropriate remedies, or show that they are unavailable, before seeking any further relief from this Court.

recalculate each inmate's release date.[10] As another court in this Circuit pointed out, time credits earned under the FSA can be lost. *See Milchin v. Warden*, No. 22-CV-195, 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) (citing 28 C.F.R. § 523.43). And the FSA provides that inmates are eligible for early release based on FSA Time Credits only when they have accumulated such credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Accordingly, Petitioner is not entitled to have his FCA Time Credits applied to reduce his sentence length until he has earned sufficient credits to warrant his immediate release from prison. *See Milchin*, 2022 WL 1658836, at *3. Accordingly, Petitioner has not shown that he is entitled to the relief he seeks – immediate calculation and application to his sentence of FCA Time Credits – under the FSA.[11]

---

[10] Petitioner seems to read the Court's November 22, 2021 Opinion and Order to suggest that the FSA required BOP to promptly recalculate his sentence on or before January 15, 2021, to account for any FSA Time Credits he has earned. (*See* Renewed Pet. at 2.) But that was not the Court's meaning. In that opinion I quoted another case for the proposition that "the FSA 'does not require the award of time credits until the end of the two-year phase-in-period, namely until January 15, 2022.'" *Rosales*, 2021 WL 5449701, at *5 (quoting *DiStefano v. Pliler*, No. 21-CV-773, 2021 WL 3524130, at *2 (S.D.N.Y. July 5, 2021)). But this meant only that BOP is, after that date, required to allow eligible inmates to earn or accumulate FSA Time Credits, not that BOP was required to immediately apply all such credits and recalculate each inmate's sentence. Ms. Meredick indicates that BOP is permitting Petitioner to accumulate FSA Time Credits. (*See* Meredick Decl. ¶¶ 13, 17.)

[11] In any case, Ms. Meredick represents that BOP will soon have in place a tool that "will automatically calculate an eligible inmate's FSA Time Credits and determine the impact of those credits on the inmate's sentence." (Meredick Decl. ¶ 16.) To the extent that Petitioner intends to challenge BOP's determination of the credits to which he is entitled and the impact those credits have on his sentence, I agree with Respondent that such a claim is not ripe for adjudication. *See Diaz v. Thompson*, No. 21-CV-1755, 2022 WL 1782679, at *3 (E.D. Cal. June 1, 2022), *report and recommendation adopted*, 2022 WL 2308904 (E.D. Cal. June 27, 2022) ("[T]he court has no way of knowing exactly how the BOP will actually calculate petitioner's earned time credits."). Should Petitioner wish to challenge any such future determination, he will be required to exhaust his administrative remedies or demonstrate a proper basis upon which the Court can excuse him from the exhaustion requirement, as discussed above. (*See* note 9.)

Nor is Petitioner entitled to the relief granted by the Court in *Stewart v. Snider*, 22-CV-294, 2022 WL 2032305 (N.D. Ala. May 10, 2022), *report and recommendation adopted*, 2022 WL 2019965 (N.D. Ala. June 6, 2022), which included a rolling recalculation of the petitioner's release date every six months. *See id.* at *8. In *Stewart*, BOP calculated the petitioner's release date to be October 20, 2022, but the petitioner believed he was entitled to be released sixty days earlier based on projected FSA Time Credits that BOP had not yet applied to his sentence. *Id.* at *1. The court discussed BOP's rollout of the FSA incentive system, including interim procedures designed to "prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement." *Id.* at *6. The court held that as a general matter, "there does not appear to be anything inherently wrong with the BOP's interim guidance," but expressed concern that the petitioner could lose out on credits to which he was entitled if BOP waited too long to recalculate his sentence. *Id.* at *7. Here, Petitioner has twenty-one years left on his sentence and is not in a position in which a delay in calculating his FSA Time Credits – even if that delay were to go on for several years – would impact his actual release date.

## IV.  CONCLUSION

For the foregoing reasons, the Renewed Petition is DENIED.

**SO ORDERED.**

Dated: November 9, 2022
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.